**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON**

**CIVIL ACTION NO. 04-170-DLB**

**MARK KRUMPELMAN, ET AL.**                                                **PLAINTIFFS**

vs.                                   **MEMORANDUM ORDER**

**ESTATE OF GRAHAM A. CODRINGTON, ET AL.**                    **DEFENDANTS**

*******************************

**Introduction**

This consolidated proceeding arises from an August 10, 2003, boating accident. Mark Krumpelman, Heather Bear, and Matthew Knapp, a minor, each claim personal injuries from the accident. Plaintiffs allege the driver of the boat, decedent Graham A. Codrington, is legally responsible for the accident and their injuries. Plaintiffs Krumpelman and Bear have also sued the boat owner, Brad Martin, for alleged negligent entrustment.

American Modern Home Insurance Company (American Modern Home) sought and was granted leave to intervene. American Modern Home issued to Graham A. Codrington a watercraft insurance policy, which policy was in full force and effect on the date of the subject boating accident. Its intervening complaint, and the responsive and counter pleadings thereto, seek a determination of whether coverage under the American Modern Home policy is implicated for the claims arising from the August 10, 2003, accident. American Modern Home now moves for summary judgment on this question.

**Discussion**

The record reflects no response has been filed to American Modern Home's motion, filed June 10, 2005. Rule 7.1(c) of the Joint Local Rules of Civil Practice calls for a party's response memorandum opposing a motion to be filed within 15 days of the motion's service. This response period is typically extended to a total of 18 days, if the 3-day service period under Federal Rule of Civil Procedure 6(e) applies. Thus, as to the pending motion, the deadline for any party to respond was June 28, 2005.

Though no response was filed to American Modern Home's motion, a ruling in its favor is not axiomatic. Under Rule 56(c), a party seeking summary judgment has the burden of showing there is no genuine issue as to any material fact and the party is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). This initial burden must always be shown, regardless of whether an adverse party has responded. *Carver v. Bunch,* 946 F.2d 451, 455 (6th Cir. 1991). In other words, "a district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded. The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that [it] has discharged [its] burden." *Id.*

Examination of American Modern Home's memorandum in support of its motion evidences that it has discharged its burden under Civil Rule 56. Its arguments are two-fold. One, that the liability coverage provision of Graham Codrington's watercraft policy does not apply to the speedboat being operated by him at the time of accident. Two, that the non-owned watercraft liability coverage provision of the Advantage Endorsement to Graham Codrington's watercraft policy also does not apply to this speedboat.

The liability coverage section of the subject insurance policy reads:

**We** will pay for **bodily injury** and **property damage** for which an insured person is legally liable. The **bodily injury** and **property damage** must be caused by an **accident** during the Policy Period shown in the Declarations. Liability must arise from the ownership, maintenance or use of the **insured watercraft.**

(Doc. #44, policy at p. 4) For purposes of the first sentence, Graham Codrington qualifies as an "insured person" under the definitions section of the policy issued to him by American Modern Home. Moreover, the August 10, 2003, accident was "during the policy period" as required by the second sentence. However, the record reveals that any liability for which Codrington's Estate may be legally liable does not arise in connection with the "insured watercraft" as called for by sentence three.

"Insured watercraft" is a defined term under the policy, "mean[ing] the watercraft shown in the Declarations, including its customary communication, navigation, safety, and operating equipment." (*Id.,* policy at p. 1) The watercraft designated on the policy declarations sheet is a 1986 Formula, serial no. TMRV5716J586. The watercraft actually involved in the August 10, 2003, accident was a Daytona Eliminator speedboat, serial no. ELB70179G900, owned by Defendant Brad Martin. This speedboat is not identified on the American Modern Home policy declarations page as being an "insured watercraft."

Thus, applying the plain language of the liability coverage section to the circumstances of this case, the outcome is clear. While Codrington is an "insured person" and the accident occurred during the "policy period," Martin's speedboat is not an "insured watercraft" under the policy. Indemnity pursuant to the general liability coverage section is therefore not invoked.

The subject insurance policy also includes a three-page "Advantage Endorsement." (Doc. #44) This endorsement provides, among other things, limited liability coverage for "non-owned watercraft."

> NON-OWNED WATERCRAFT LIABILITY COVERAGE
>
> **We** will pay for **bodily injury** or **property damage** for which **you** or **your household** are legally liable as a result of the operation of a **non-owned watercraft.** All terms, conditions, exclusions and limitations to Coverage B for the **insured watercraft** apply to **non-owned watercraft** coverage for **bodily injury** or **property damage** except as stated below.

(*Id.*, endorsement at p. 2) The question raised by this provision is whether Martin's speedboat qualifies as a "non-owned watercraft," such that the operation of it by Graham Codrington was insured pursuant to this endorsement.

A "non-owned watercraft" is defined under the endorsement as a watercraft rented or borrowed by the named insured with the owner's permission. (*Id.*, endorsement at p. 1) However, certain watercraft are excluded from the endorsement's definition of "non-owned watercraft" and thereby excluded from coverage. Specifically, American Modern Home references two exclusions as applicable to Martin's speedboat – that it was a boat available to the named insured for regular use, or that it was a boat capable of attaining a top speed in excess of 50 miles per hour (m.p.h.), either of which excludes it from being a "non-owned watercraft" under the endorsement.

Under Kentucky law, "[w]here the terms of an insurance policy are clear and unambiguous, the policy will be enforced as written." *Kemper National Ins. Companies v. Heaven Hill Distilleries, Inc.,* 82 S.W.3d 869, 873 (Ky. 2002). The enforcement of such clear and unambiguous terms includes the terms of policy exclusions which do not

4

contravene public policy or a statute. *Id.; Meyers v. Kentucky Medical Ins. Co.,* 982 S.W.2d 203, 209-10 (Ky. Ct. App. 1998).

The first exclusion relied upon by American Modern Home is for watercraft "available for regular use" by Graham Codrington. The policy in question does not define the exclusionary phrase "available for regular use." This does not, however, render the phrase ambiguous. Contracts are construed "as persons with usual and ordinary understanding would construe them." *National Insurance Underwriters v. Lexington Flying Club, Inc.,* 603 S.W.2d 490, 493 (Ky. Ct. App. 1979). "Available" is defined as being accessible for use; at hand. *Webster's II New Riverside University Dictionary* (1994). And "regular" is defined as being customary, usual, or normal. *Id.* In *Kentucky Farm Bureau Mutual Ins. Co. v. Kitchen,* 395 S.W.2d 769, 771 (Ky. 1965) the court noted that it is the facts of a particular case which determine whether a vehicle is "available for the regular use" of the insured. And in *Grange Mutual Companies v. Bradshaw III,* 724 S.W.2d 216, 219 (Ky. Ct. App. 1986) the court similarly concluded that in determining whether a vehicle was "furnished for regular use," a relevant consideration for the factfinder is whether it was necessary to seek the express permission of the owner before using the vehicle.

Thus, there is nothing ambiguous about the language of this endorsement exclusion itself. Rather, the question is whether the facts relevant to determining whether this exclusion applies have been established and are undisputed.

Movant has established these facts. American Modern Home's memorandum details the circumstances under which Graham Codrington came to be operating Martin's speedboat on the date in question. Specifically, American Modern Home relies upon Sheila Codrington's deposition testimony that Martin's boat had been stored at their home for

approximately a year, that the keys were kept in the ignition, and that Graham Codrington was permitted to use the boat whenever he so desired.  (Doc. #43, at pp. 44-48, 86)  This testimony is corroborated by deposition testimony of Mark Krumpelman (Doc. #41, at pp. 35, 37-38) and by the affidavits of Sheila Codrington's father, Virgil Cotton, and her sister, Bamba Cotton (Doc. #43, Exs. 4 & 5).  This evidence reveals that the arrangement between Graham Codrington and Brad Martin was such that it was unnecessary for Codrington to seek out Martin, to obtain his express permission, and to take physical possession of the boat on each occasion he sought to use it.  Rather, this evidence supports the conclusion that Martin's boat was already in his possession and available to him for his regular use.

The second exclusion American Modern Home relies upon is that which excludes as a "non-owned watercraft" those boats capable of attaining top speeds of over 50 m.p.h. Similar to the analysis of the first exclusion, the language of this exclusion is not in and of itself ambiguous.  Rather, whether facts have been shown supportive of a conclusion that Martin's boat was so capable is the relevant query.  American Modern Home references the affidavit of Gary Hill, a specialist in the marine and watercraft industry. (*See* affidavit of Gary Hill, attached to Intervening Plaintiff's motion, Doc. #46)  Hill states he replaced the engine of this particular speedboat in 2002; the horsepower of the replacement engine rendered the boat easily capable of speeds over 80 m.p.h.; and this same replacement engine was still in Martin's boat when he examined it after the August 2003 accident.  Hill further states he has personally paced Martin's boat traveling at a speed of 98 m.p.h. American Modern Home also relies upon deposition testimony of Mark Krumpelman of his personal experiences of being on Martin's speedboat while it was being driven at speeds

6

of between 50 and 60 m.p.h. (*See* Doc. #41, at pp. 36, 50) Matthew Knapp, Sr. testified that after an earlier run in the boat on the date of the accident, Codrington told him they had been traveling 75 or 80 m.p.h. (Doc. #51, at pp. 86-87) Mark Krumpelman's recollection was that Codrington said they were going around 60 m.p.h. during that first run. (Doc. #41, at p. 50) While Knapp and Krumpelman offer inconsistent recollections of speed, both confirm the boat was traveling in excess of 50 m.p.h.

Thus, Movant has identified certain policy provisions as being relevant to determining whether coverage under its policy is implicated. Movant has persuasively argued that the language of these policy provisions is clear and unambiguous. The facts material to consideration of these provisions have been adequately established by American Modern Home. In addition, the Court's review of the pleadings, depositions, and other case filings reveals no substantial evidence creating a genuine issue as to the accuracy of these facts. Nor has any other party come forth with contrary proof of Graham Codrington's access to Martin's boat or the speed capabilities of that watercraft. Therefore, it is reasonable to conclude that American Modern Home has satisfied its initial burden of establishing that no material fact exists and that it is entitled to judgment in its favor as a matter of law.

## Conclusion

For the reasons discussed above, an award of summary judgment to American Modern Home is warranted. Accordingly,

**IT IS ORDERED** that the Motion for Summary Judgment of Intervening Plaintiff American Modern Home (Doc. #46) is hereby **granted.**

**IT IS FURTHER ORDERED** that, in light of this determination that the watercraft policy issued by American Modern Home provides no coverage for the August 10, 2003, boating accident, any Counterclaims by Plaintiffs against American Modern Home seeking a declaration of coverage (*see* Docs. #15 and #23) are hereby **dismissed with prejudice.**

This 14th day of July, 2005.



Signed By:
*David L. Bunning*   DB
United States District Judge

G:\DATA\ORDERS\Cov04\170-AmHomeMSJ.wpd